## Bingham v. Carnes, et al.

(Decided February 14, 1913.)

### Appeal from Bell Circuit Court.

Minerals—Action to Be Adjudged Owner of—Rights of Way Over Sur-
    face—Title—Evidence—Sufficiency of.—In an action by appel-
    lant praying to be adjudged the owner of the minerals in certain
    described land and for reasonable rights of way over the surface,
    it being manifest from the language of the deeds that she was
    invested with title to all the minerals, the lower court erroneously
    adjudged appellee entitled to them. The evidence shows that the
    minerals were embraced in the conveyances from the time of the
    execution of title bond from Rice to Bingham, in 1860, down to the
    conveyance to appellant and she is entitled to be adjudged such
    owner and for such rights of way over the surface as may be
    necessary for their removal.

A. G. PATTERSON, for appellant.

N. J. WELLER, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing
on original and affirming on cross appeal.

Prior to the year 1852 or 1853, Joshua Bingham was
a resident of Bell county, and owned certain tracts of
land on the left fork of Straight creek in that county;
in some way which does not clearly appear, shortly after
his death, his two sons, James W. and Wm. M. Bingham,
became the owners of all the lands formerly owned
by their father on that creek. Joshua Bingham died
about 1853, and the two sons continued to own the lands
and lived upon them. By some arrangement between
themselves, James W. Bingham became the owner of
what is known as the Joshua Bingham home farm, which
consisted of 300 or 400 acres covered by several differ-
ent patents.

Prior to the death of Joshua Bingham, he, and one
B. A. Rice each claimed to own a certain tract of
land of about sixty-six acres lying between a one hun-
dred acre patent on the left hand side of Long Branch,
(a tributary of the left hand fork of Straight Creek),
and the top of the ridge between Long Branch and
Caney Fork, another tributary.

After the death of Joshua Bingham, and after the
division between James W. and Wm. M. Bingham, both
James W. Bingham and B. A. Rice still continued to
claim this same tract of land. In September, 1860, James
W. Bingham and Rice settled their controversy about

this tract of land, and Rice executed to him a title bond therefor.

The bond does not appear in this record, but the evidence that there was such an instrument is clear and satisfactory, both from the evidence of James W. and Wm. M. Bingham, and from the fact, that long thereafter, and on the third day of May, 1881, in a deed from B. A. Rice to E. B. and Noah Bingham concerning this same land, reference is made to the bond executed by Rice to James W. Bingham in September, 1860.

James W. Bingham remained the owner and in possession of the Joshua Bingham home farm, and this Rice Tract adjoining, until about 1880, when he conveyed to his son E. B. Bingham a part of the farm on the right side of the left fork of Straight Creek, and on the right side of Long Branch; and on the sixth day of April, 1880, he and Wm. M. Bingham conveyed to Noah Bingham the following tract of land, to-wit:

"A certain tract or boundary of land lying in Bell county, Kentucky, on the left hand fork of Straight Creek, it being a part of the old Joshua Bingham farm, upon which he died; bounded as follows, to-wit: 'Beginning at Elias B. Bingham's beginning corner, running thence with his line to its *terminance,* thence with lines of the Joshua Bingham lands now owned by J. W. and Wm. M. Bingham, around to the beginning, *including all the lands owned by the parties of the first part on the West side of Long Branch, excepting such minerals as may be on same, which is not herein deeded;* also all the lands on both sides of the creek owned by said parties below E. B. Bingham's line."

James W. Bingham continued to own the minerals under that reservation until the ninth day of September, 1903, at which time J. W. and Wm. M. Bingham conveyed to Robert S. Bingham "all the minerals that may be found and contained in the land of the said Joshua Bingham's farm, except that part heretofore conveyed to Elias B. Bingham." Thereafter, and on the ninth day of June, 1906, Robert S. Bingham conveyed to appellant, Rosa E. Bingham, "all the minerals that may be found and contained in the land known as the farm of Joshua Bingham, late of Bell county, Kentucky, deceased, excepting therefrom" the tract of land conveyed by James W. Bingham, &c., to E. B. Bingham.

The deed from J. W. and W. M. Bingham to Noah Bingham expressly conveyed the surface of all the Bingham lands not previously conveyed to E. B. Bingham, just as the deed from J. W. and W. M. to Robert S. conveyed the mineral on all the Bingham lands not conveyed to E. B. Bingham, and the deed from Robert S. to Rosa did the same.

After E. B. and Noah Bingham became the owners of the surface to their respective tracts by virtue of the conveyances from James W. and Wm. M. Bingham, it seems that there was still some controversy between them and B. A. Rice as to the correct location of the lines between them, and Rice made Noah Bingham a deed locating the lines, and which included the land embraced in the title bond executed by him to James W. Bingham in September, 1860, without any reservation whatever of the minerals therein.

Notwithstanding this conveyance from Rice without reserving the minerals, Noah and E. B. Bingham on the seventeenth day of November, 1884, executed a conveyance to one Phelix Miller for all that part of the Joshua Bingham farm on the west side of Long Branch, including the part formerly claimed by Rice, and expressly excepted therein all mineral on said lands, clearly thereby, recognizing the fact that the mineral rights in the Rice land was still in J. W. Bingham, although Rice had conveyed them the full title, including minerals.

After that, there were several conveyances, none of which excepted the mineral, until the Noah Bingham tract came to be owned by appellee, J. L. Carnes; and after he became the owner, he procured a conveyance from Noah and E. B. Bingham in consideration of Fifty Dollars to the mineral under all of the Noah Bingham tract, but with only a special warranty from them.

The lower court adjudged that the tract of about sixty-six acres of land formerly claimed by Rice, and which laid between the one hundred acre patent and the crest of the ridge between Long Branch and Caney Fork, was not covered by the mineral reservation in the several deeds, and adjudged appellant to be only the owner of the minerals on that part of the land originally known as the "Joshua Bingham farm," and that appellee, Carnes, was the owner of both the surface and the mineral in the sixty-six acres formerly claimed by Rice.

The only question is whether James W. Bingham

was the owner of the mineral on the tract claimed by Rice, and embraced in his title bond, and if so, was it embraced in the conveyance from him down to appellant. We have seen that James W. Bingham from the year 1860 up to 1880, when he conveyed this land to Noah Bingham, was the holder of a title bond for this Rice tract of land, and the evidence shows that he had paid for it, and that he had been in possession of it together with the adjoining lands; his deed to Noah Bingham included *all the lands he owned on the west side of Long Branch,* which included the Rice lands, and he expressly excepted all the minerals on the lands embraced in that conveyance.

It will be recalled that even in the life time of Joshua Bingham, he claimed to be the owner of this Rice land, and that after his death, his son, James W. Bingham, compromised or settled the controversy with Rice, and took his title bond therefor; so that it was perfectly natural for the Binghams to treat this Rice land as a part of the Joshua Bingham farm, it having been claimed as such by Joshua Bingham, and subsequently the title thereto confirmed by agreement between his son and Rice.

It is perfectly manifest from the wording of the deed from James W. and Wm. M. Bingham to Robert S. Bingham, that they intended to, and did invest him with title to all the mineral on the Joshua Bingham farm west of Long Branch; they treated in that conveyance the Rice land as a part of the Joshua Bingham farm; but if that conveyance could be construed not to convey the minerals on the Rice land, tne title thereto would still be in James W. Bingham and not in appellee, Carnes.

The lower court seemed to be of the opinion that the Rice land could not be treated as a part of the Joshua Bingham farm by reason of the expressions in the deed from James W. and Wm. M. Bingham to Robert S. Bingham, and from Robert S. Bingham to appellant, referring to the minerals on the "Joshua Bingham farm," and that the minerals on the Rice land were not embraced therein.

But we are of the opinion, that the whole transaction, from beginning to end, justifies no other conclusion than that the surface of all the land owned by James W. Bingham west of Long Branch was embraced

in his deed to Noah Bingham, and that the mineral on all of that land was embraced in his deed to Robert S. Bingham, and Robert S. Bingham's deed to appellant. This view necessarily disposes of appellees' cross appeal, which, however, is not insisted upon.

The judgment is reversed on the original appeal, and affirmed on the cross appeal; and the lower court is directed to enter a judgment adjudging appellant to be the owner of all the mineral on and under the land described in her petition, and to adjudge her such reasonable rights of way over the surface thereof as may be necessary for the removal of any minerals therein.